United States v. Johnson is the next case for argument. The District Court's sentence here was procedurally unreasonable because it sentenced Mr. Johnson as if the firearm in this case were stolen, and it wasn't. The conclusion was a mistake that affected the proper calculation of Johnson's guideline range, and the mistake mattered because it affected his final sentence, or, to put it negatively... How did it affect his guideline range? He was sentenced as a career offender, was he not? That's correct, Your Honor. Which means it didn't affect the guideline range under which he was sentenced. Am I missing something here? Yes, because the properly calculated guideline range is not just a crude number, not just a crude range. The guidelines and their application, and the proper steps going through the application of the guidelines, matters. That's how you know, or a judge knows, if the career offender guideline applies. The advisory range that the parties were working from at the end of the day in the District Court was 151 to 181, correct? That's correct. Did the 151 to 181 range, was it impacted in any way, shape, or form by the enhancement regarding whether the firearm was stolen? Yes, but it depends on what you mean by impacted. Well, there's no part of the calculation to arrive at the 151 to 181. That's where we disagree, is that you only get to the 151 to 188 when you know what the otherwise applicable guideline range would be. You don't use the career offender in all cases. No, fair enough, but that alternative range we know is lower than 151. So I think Judge Easterbrook's point is 151 is what's controlling at the end of the day here when all the calculations are completed. And I disagree that in the, I guess the post book or three step process that we use for sentencing, that the guidelines calculation, or that first part of it, is reduced to just that number. And that we can say no harm, no foul, if that range is correct. What matters is the proper calculation, because that's also how we, the proper. Where you lose me is the proper calculation. Yes. Is there any doubt that the career offender level was properly calculated? Yes, but it depends on what you mean by properly calculated. And our view is. You're beginning to sound like President Clinton. Our argument is that the intermediate steps matter. Yes, but why? If the addition of the levels for a stolen gun made the normal range higher than the career offender range, then it would matter. But my understanding is that the normal range is below the career offender range, with or without the extra levels for the stolen gun. Absolutely. And therefore, the only range that matters is the career offender range, which did not depend at all on the stolen gun finding. Is that right or wrong? Where I disagree, and our point is, is that the guideline exercise matters. And the reason that is. How? Explain how the 151 to 181 range depended on the stolen gun finding. Oh, where we disagree, then, is that as long as the court gets to the right range, or the correct range, regardless of the underlying calculations, that isn't good. I don't hear an answer to my question. Can you explain how the 151 to 181 range rested on or depended on the stolen gun finding? It did not. Thank you. To finish my argument, then, what matters is it isn't just the crude range. And if you interpret the Supreme Court and this court's jurisprudence about how sentencing should procedurally proceed, that what matters is the underlying calculations and what enhancements apply and what reductions apply. That matters because, as our district court states at our plea hearings, is that the guidelines are intended or they're designed to take into account a broad variety of aggravating and mitigating factors. But if it doesn't agree with the guidelines, that's not the end of the story. You then go to the second part where you look at the 3553A factors. And if you have a calculation that is based on mistakes, even though the range is correct, that messes up the 3553A factors. And what happens here is that Mr. Johnson is being sentenced for having a stolen firearm as if he were possessing a stolen firearm that wasn't stolen. And that has to matter. My sense is your adversary may disagree with that. I mean, it's not clear-cut. It's not like the district court just made this up. Didn't somebody call and report the gun stolen? Yes. What the district court had before it was a police report about a man who had reported a burglary about 22 hours after he had discovered that his house or apartment had been broken into. That delay itself is suspicious. If your home has been invaded, you're either going to call the police right away or you're not. But I think more broadly, it's not as if somebody came in and testified before the judge and said, hey, I reported this stolen. What we're hearing is we're hearing a report from a police officer based on a story that the firearms owner told him. And that can't be enough under a preponderance standard to say the gun's stolen. Also suspicious here is he later, the gun owner, asked the officer a lot, what's my liability here if somebody else uses this gun? Well, if he really cared about, I guess, the liability of a user, if it were like a credit card or stolen like that, then he would have called right away. This has all the indicia of a straw purchase and then a reporting of a stolen quote-unquote firearm to cover himself. And I think it was unreasonable for the judge, based on that police report with that suspicious story, to find that the gun was stolen. And keep in mind that he's already found that the gun is stolen, meaning the judge has. And that's got to bear on the 3553A factors of the final analysis of the sentence. Because he's saying, he doesn't say, but he doesn't say, look, I'm not going to consider whether or not this is a stolen firearm when I'm applying the 3553A factors. And that's why the underlying calculations in the guidelines matter for 3553A purposes, because then the judge makes the analysis about whether the guidelines are capturing all the aggravating and mitigating factors that ought to apply, or that Congress says go into calculating a just sentence. I'll reserve if there are no more questions. Certainly, counsel. Thank you. Good morning, Your Honors. Good morning, Mr. Moyers. May it please the Court. Mr. Elgersma. My name's Chad Elgersma. I'm with the U.S. Attorney's Office out of the Western District of Wisconsin. I'm representing the government in this matter. The defendant is arguing that a two-level sentencing guideline enhancement for a firearm was applied in error, that this weapon was stolen, so it shouldn't have been applied. What he fails to mention, however, is that this enhancement never affected his sentence. He actually conceded that it did not. That's correct, Your Honor. He said that should not be counted as a harmless error because the mistake impressionistically affected the judge's 3553A discretion. It's hard to accept that argument because this was a sentence ultimately substantially below the guideline range. It's a 96-month sentence, and the bottom of the guidelines with the career offender enhancement is 151. Yes, Your Honor. Doubly harmless. Yes, Your Honor. The government would agree with that. Because it did not affect his sentence, because there really was no harm, should it have been applied, the government requests that the judgment and conviction of the District Court be affirmed. If there are no questions, the government rests on its written submission. Thank you. Anything further, Mr. Moyers? Not that much to respond to. In the appellant's reply brief, to make the point, we point out the hypothetical. Imagine if the judge had reached this correctly calculated guideline range by applying, let's say, the fraud or 2B1.1 or some other guideline and applying aggravating and mitigating specific offense characteristics and then went on with the sentencing, even though reached the same number of 151 to 188, there would be serious concerns about whether that sentence was procedurally reasonable. And so that's why, or at the bottom, that's why the intermediate steps matter. Are there no more questions? Seeing none, the case is taken under advisement.